Margaret B. Marshall, Appellant, v. Chicago Herald Company and The Chicago Record-Herald, Appellees.

Gen. No. 18,893.　(Not to be reported in full.)

Appeal from the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1912. Affirmed. Opinion filed March 5, 1914.

### Statement of the Case.

Action by Margaret B. Marshall against Chicago Herald Company, a corporation, and The Chicago Record-Herald, a corporation, to recover for libel growing out of the publication of the following article:

## "WOMAN LENDERS UP.

### Two Officials of Salary Loan Concerns Are Questioned by Judge Landis.

### ONE ACCUSED BY FIREMAN.

Two women officials of salary loan concerns were in the limelight in court proceedings yesterday.

Mrs. L. G. Smith of 5326 Calumet avenue, who holds power of attorney in the Federal Loan Company and a New York concern, was severely questioned by Judge K. M. Landis as to the business of the companies.

Mrs. M. B. Marshall, who has offices in the Commercial National Bank Building, became the center of an investigation when Stephen Keating, a fireman belonging to engine company No. 32 testified in Municipal Judge Goodnow's court that he was unable to pay $40 a month alimony to his wife because of the grasp Mrs. Marshall had on his pay check.

## SUSPENDED FROM PLACE.

Keating testified that he had borrowed $100 from Mrs. Marshall last fall with the understanding that he was to pay back $213 and also receive an insurance policy. He said that she refused to tell him how much he had already paid and that in January when he refused to make the regular payment he was suspended from the fire department for three days at the instance of Mrs. Marshall.

Judge Goodnow withheld a decision in Keating's case until an investigation could be made as to what he owes the woman loan agent.

Mrs. Smith, the other agent, gave herself up yesterday after being searched for two weeks by bailiffs of the District Court. She was wanted in connection with the investigation being conducted into the affairs of Luman B. French, owner of the Federal Loan Company and a number of similar concerns.

'I knew they were looking for me, but I was timid about coming into court,' Mrs. Smith explained to Judge Landis, when asked why she had gone to Unity, N. Y., when she knew the officers were searching for her.

## CALLS FRENCH OLD FRIEND.

Mrs. Smith looked and talked like anything but a grasping loan agent. She is a little woman, 60 years old, and says she is a dressmaker. She said that she had known French since he was a boy and that she had invested $500 in his business and had given him the right to use her name in connection with the affairs of the loan companies.

'I didn't know my name was being used in connection with a New York concern, or exactly what the business was,' Mrs. Smith said in answer to Judge Landis' questions.

In direct contradiction to this testimony two documents bearing her signature were offered in evidence.

One granted the use of Mrs. Smith's name in connection with the New York concern and the other gave like powers in connection with the Chicago company.

Mrs. Smith was released on her own recognizance until March 21, when French will be given an opportunity to show Judge Landis why he should not be punished for giving perjured testimony.''

From a judgment sustaining a general demurrer to the declaration, defendant appeals.

EMERY S. WALKER and WALTER E. MOSS, for appellant.

MATZ, FISHER & BOYDEN, for appellees.

MR. PRESIDING JUSTICE FITCH delivered the opinion of the court.

## Abstract of the Decision.

1. LIBEL AND SLANDER, § 96*—*when meaning of words not to be extended by innuendo.* It is not permissible in a pleading to enlarge and extend by innuendoes the meaning of alleged slanderous words beyond their natural import, except so far as such enlarged meaning is warranted by prefatory matter set forth in the inducement or colloquium.

2. LIBEL AND SLANDER, § 7*—*how words construed.* In order to ascertain the meaning of a published article, the whole of the article must be considered, each phrase must be cnostrued in the light of the entire publication, the words are to be taken in their natural and obvious meaning, and in the sense that fairly belongs to them.

3. LLBEL AND SLANDER, § 7*—*how headlines of newspaper article construed.* The headlines of a newspaper article must be read in connection with the language which follows.

4. LIBEL AND SLANDER, § 41*—*what not an imputation of fraud and dishonesty.* Newspaper article construed and *held* not in itself or by innuendo to charge plaintiff with practices supposed to be common to "Loan Sharks," such as dishonesty, fraud and extortion; and the mere fact that plaintiff was engaged in loaning money, and that a newspaper other than defendant was engaged in a campaign against "Loan Sharks" would not change the natural meaning of the words published into an implied accusation of fraud, dishonesty or extortion by plaintiff.

*See Illinois Notes Digest, Vols. XI to XV, same topic and section number.